CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 0 5 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> ) <br> v. ) <br> ) <br> ) <br> FRANK G. BUCKNER, ) <br> ) <br> Defendant. ) <br> ) | Criminal No. 5:05-CR-00006 <br><br> **MEMORANDUM OPINION** <br><br> By: Samuel G. Wilson <br> United States District Judge |

The defendant, Frank G. Buckner ("Buckner"), is charged with wire and mail fraud. Buckner has moved to suppress evidence from the search of a computer's hard drive seized during a search of his residence. Buckner's wife consented to the search of the residence and to the seizure of the computer, which she leased from Prime Time Rentals. Buckner claims that the evidence was obtained in violation of his Fourth Amendment rights. Having conducted an evidentiary hearing and having reviewed the ordered briefing, the court finds that under the circumstances it was objectively reasonable for Buckner to understand "that his privacy [was] not absolute, but contingent in large measure on the decisions of another" and that he assumed the risk of his wife's actions. United States v. Davis, 967 F.2d 84, 87 (2d Cir. 1992). Thus, Buckner's wife's consent to the search of the computer was valid, and the court denies Buckner's motion.

I.

Upon receiving complaints that someone using AOL and eBay accounts opened in Michelle Buckner's name had committed wire fraud using eBay, Grottoes police officers went to

the Buckner residence at 1301 Holly Avenue, Grottoes, Virginia, on July 28, 2003, to speak to Michelle Buckner. She was not at home, and the police officers asked her husband Frank Buckner to have her contact them. A short time later, Buckner called Chief Lawhorne to ask why the police officers needed to speak to his wife, and Lawhorne told Buckner that the matter concerned eBay transactions.

Michelle Buckner went to the police station that same evening and denied any knowledge of illegal eBay transactions. She informed the police that she only used the home computer occasionally to play Solitaire and that she had leased the computer from Prime Time Rentals. She also told the police that she believed her husband, who was on probation in Maryland, had left the area.[1]

On July 29, 2003, Lawhorne and Sgt. Tony Stovall, the current chief, went to the Buckner residence and interviewed Michelle Buckner again. She continued to claim that she had no knowledge of the fraudulent eBay transactions and that she had little or no knowledge of computers or her husband's online activities. She consented to a search of the premises and told the officers to take whatever they needed and that she wanted to cooperate fully. At the time, the computer was on a desk in the living room, a common area of the home, and the officers could see from its screen that it was on. With Buckner's wife's consent, the officers seized the computer and several notebooks in Buckner's handwriting that were on or near the desk.

Lawhorne took the computer to Sgt. Michael Layman of the Rockingham County Sheriff's office on July 30, 2003, and Layman "mirrored" the hard drive. Between July 30, 2003,

---

[1] Buckner was arrested on September 26, 2003, on a fugitive warrant. He claims that he returned to the area a few times during the interim to visit his children.

and August 5, 2003, Layman and a James Madison University officer conducted a forensic analysis of the mirrored hard drive. Layman testified at the suppression hearing that he found no evidence of password-protected files during the analysis; however, he also testified that the forensic software he used would not necessarily detect which files were password protected. Buckner testified that only he had the password necessary to log onto the computer and that a password was necessary to access files under his user name, though he had not encrypted these files. Because Buckner's wife permitted the lease to expire for nonpayment, the police returned the computer to Prime Time Rentals on September 30, 2003.

## II.

Buckner concedes that his wife had the authority to consent to a general search of the computer but contends that her authority did not extend to his password-protected files on the computer's hard drive. The government claims that Buckner's wife had actual and apparent authority to consent and that Buckner abandoned the computer when he fled the area and, therefore, lacks standing to challenge the search. The court finds that Buckner had a reasonable expectation of privacy in his password-protected computer files, but concludes also that his wife had a legitimate, substantial interest in all aspects of the computer sufficient to validate her unrestricted permission to search. It follows that the officers did not obtain the evidence from the search of the computer's hard drive in violation of the Fourth Amendment.

"[T]he Fourth Amendment protects people, not places." Katz v. United States, 389 U.S. 347, 351 (1967). Therefore, it protects a person's reasonable expectations of privacy. In the words of Justice Harlan, "there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is

3

prepared to recognize as 'reasonable.'" Katz, 389 U.S. at 361 (Harlan, J., concurring). Here, the evidence establishes that Buckner protected his files from disclosure to third persons, including his wife, through the use of a confidential password. He, thereby, exhibited an actual expectation of privacy. The court also has no hesitancy in concluding that, despite the fact that Buckner's wife leased the computer in her own name and made the rental payments, Buckner's expectation was reasonable. See United States v. Ramapuram, 632 F.2d 1149, 1154 (4th Cir. 1980) ("Ownership alone is not enough to establish a reasonable and legitimate expectation of privacy. Ownership is relevant to the inquiry . . . , but the total circumstances determine whether the one challenging the search has a reasonable and legitimate expectation of privacy in the locus of the search.") (quoting United States v. Dall, 608 F.2d 910, 914 (1st Cir. 1979)). Any other conclusion would misread Fourth Amendment jurisprudence by tethering it wholly to property law.

Having found that Buckner had a reasonable expectation of privacy in the password-protected files on the computer's hard drive, the court turns to the question whether Buckner's wife could give unrestricted access to law enforcement officials to search that hard drive. In answering that question, the court finds clear distinctions from Fourth Circuit precedent because Buckner's wife had a substantial, legitimate, and overarching interest in all aspects of the computer.

Supreme Court precedent makes clear that "when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects

4

sought to be inspected." United States v. Matlock, 415 U.S. 164, 171 (1975). Third-party consent is grounded in the notion that a person who shares property with another–a house, a room, an automobile, a computer, or a storage container–under circumstances that make it objectively reasonable for him to understand "that his privacy is not absolute, but contingent in large measure on the decisions of another," assumes the risk of those decisions. See United States v. Davis, 967 F.2d 84, 87-88 (2d Cir. 1992) (quoting United States v. Chaidez, 919 F.2d 1193, 1202 (7th Cir. 1990) (applying United States v. Matlock, 415 U.S. 164 (1975))).

Applying this principle, courts have held that where no indicia of shared control or access is evident, third-party consent for the search of effects or premises is invalid. For example, in United States v. Block, 590 F.2d 535 (4th Cir. 1978), the Fourth Circuit held that a mother who had access to her son's room but did not have a key to her son's locked footlocker in that room could consent to a search of her son's room, but not his footlocker. Block, 590 F.2d at 540-41 (noting that "the real linchpin of [third party consent] is not agency power in the third person but simple authority in that person's own right to permit inspection"). The court noted that, in contrast to her son's footlocker, the mother had the authority to "permit inspection of [her son's] room" because "she shared access to the room . . . under circumstances that made it reasonable for the police to believe that she had a right to permit its inspection, and that her son must have assumed the risk that she would do so." Id. Applying this rationale in Trulock v. Freeh, 275 F.3d 391 (4th Cir. 2001), the Fourth Circuit held that when two parties merely share joint access to a computer, one may consent to a general search of the computer in the absence of the co-user, but that authority does not extend to the co-user's password-protected files. Trulock, 275 F.3d at 403 (stating that the "password-protected files are analogous to the locked footlocker inside the

5

bedroom" and "[b]y using a password, [the defendant] affirmatively intended to exclude [the computer co-user] and others from his personal files").

Here, unlike Block and Trulock, there is evidence of a "sufficient relationship" between the third party who has given consent–Buckner's wife–and the "effects" that were searched–the computer's hard drive. Buckner's wife leased the computer *solely* in her name, a fact the officers knew when they visited the Buckner residence on July 29, 2003; the AOL and eBay accounts were in his wife's name; the alleged fraud and online activity occurred in her name; the computer was located on a desk in the living room, a common area of the home; the computer was on at the time the officers entered the living room, although Buckner had purportedly left the area; and none of the files were encrypted. Under the circumstances, it was objectively reasonable for the authorities to conclude that Buckner's wife had a legitimate, substantial interest in all aspects of the computer sufficient to validate her unrestricted permission to search. From Buckner's perspective, it was objectively reasonable under the circumstances to understand that his privacy in his password-protected files was not absolute. He assumed the risk that his wife might give another person access to the computer's hard drive, whether to a technician, the lessor, or the police.

In addition, Buckner's wife was under suspicion for alleged fraudulent online activities committed in her name on a computer which she leased. Yet, Buckner would have the court define his expectation of privacy so broadly that it would overwhelm his wife's own reasonable expectations in property leased solely in her name and deprive her of a valuable opportunity to exonerate herself in a criminal investigation. See United States v. Botsch, 364 F.2d 542, 547 (2d Cir. 1966) (holding that landlord's consent for search of rented shanty was valid because the

landlord "having been made an unwitting accomplice by [the defendant] had a vital interest in cooperating with Inspectors so that he could remove any taint of suspicion cast upon him"); United States v. Diggs, 544 F.2d 116, 120-21 (3d Cir. 1976) (stating that "the right of a custodian of the defendant's property who has been unwittingly involved by the defendant in his crime to exculpate himself promptly and voluntarily by disclosing the property and explaining his connection with it to government agents, must prevail over any claim of the defendant to have the privacy of his property maintained against a warrantless search by such agents"). The court rejects Buckner's arguments and instead finds that though Buckner had a reasonable expectation of privacy in his password-protected files, his wife had a substantial, legitimate, and overarching interest in all aspects of the computer sufficient to authorize her to permit a complete inspection of the computer's hard drive.

### III.

For the reasons stated, the court denies Buckner's motion to suppress.

**ENTER**: This 5th day of January, 2006.

UNITED STATES DISTRICT JUDGE

---

[2]Though he did not appear to raise the issue at the evidentiary hearing, Buckner is also objecting to the introduction of notebooks seized during the consent search of his residence on July 29, 2003. Buckner claims that the police did not ask his wife specifically for the notebooks and thus, that the seizure exceeded the scope of her consent to search the house and to seize the home computer. The government contends that Buckner's wife told the police that they could take whatever they needed and that she wanted to cooperate fully and, therefore, that the seizure of the notebooks was constitutional. See Florida v. Jimeno, 500 U.S. 248, 251 (1991) (stating that the "standard for measuring the scope of . . . consent under the Fourth Amendment is that of 'objective' reasonableness–what would the typical reasonable person have understood by the exchange between the officer and the [person consenting to the search]"). The court agrees with the government and finds that the seizure of the notebooks did not exceed the scope of Buckner's wife's consent. Thus, the court denies Buckner's motion to suppress the notebooks.

7